(16 App. Div. 458.)

### PECHE v. SLOANE.

(Supreme Court, Appellate Division, First Department. April 23, 1897.)

PRINCIPAL AND AGENT—EVIDENCE OF AGENCY.

A lessee is justified in dealing with the owner's husband as the owner, where such owner purchased a few days after the lease was executed, and the lessee was not informed thereof, and had all his subsequent dealings with the husband, paying rent to and taking receipts from him, and therefore the acceptance of a surrender by the husband discharges the lessee.

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Joseph Peche against Joseph B. Sloane for rent. From a judgment entered on a verdict in favor of defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

Samuel D. Sewards, for appellant.
M. M. Forrest, for respondent.

PARKER, J. This was an action to recover for rent alleged to be due under a lease. The defense was a surrender of the lease and of possession of the premises at the request of the landlord. That the defendant was paid $500 for surrendering possession of the premises two years before his term expired, by the husband of the owner, and that the purpose was to secure a tenant for a term of

ten years at an increased rent, is admitted. But the plaintiff insisted upon the trial, and still urges on appeal, that as all of these negotiations were had with the husband of plaintiff's assignor, instead of the assignor,·they cannot be made available for the protection of the defendant. Had the expected tenant executed the lease for ten years at the promised increased rental, there would have been no opportunity for this controversy. But he failed to do it, and then the owner of the property came to a full realization of the fact that she had personally taken no part in the negotiations with the tenant who had been paid to surrender the premises, and she thereupon assigned the claim for rent for the two years to this plaintiff. The case was tried by the defendant upon the view that the husband was the agent of the plaintiff's assignor in all that he did in relation to that property, and that the surrender was therefore to the owner. That was the question submitted to the jury, and they have found the fact so to be. With that finding we see no reason for interference. The defendant leased the premises of Susan Murray, June 5, 1891. Twenty-four days later, Susan Murray conveyed them to Eleanor P. Gage, plaintiff's assignor. The defendant did not learn that Mrs. Gage was the purchaser. Indeed, until after he surrendered possession, May 1, 1893, he never saw or heard of Mrs. Gage in connection with the property. All of his dealings were with her husband. To him he paid the rent, and paid it by check payable to his order. From him he received receipts for the rent. With Gage, and in the presence of Bennet & Graf, real-estate agents, the negotiations for the surrender of these premises were had. They were instigated by Gage or the real-estate agents, not by the defendant; and the result was that defendant accepted $500, and surrendered possession to Gage, whom he supposed was the owner of the premises, and from whom he took an agreement that the premises should not be let for a business similar to that of defendant's for a period of two years. It is true that in this record will not be found the appointment of Gage as agent for his wife in the management of this property; not a word that she said to him on the subject; not even an oral admission to that effect. And she does not appear as a witness to tell what the fact was. But we are not always confined to the language of parties, to discover their relations towards each other on particular subjects. Their conduct in certain situations is oftentimes more satisfactory, as evidence of that truth for which those charged with the duty of weighing evidence are seeking, than their testimony on the subject. We are to inquire what Mr. and Mrs. Gage did, therefore, for the purpose of ascertaining whether Gage actually represented her in obtaining possession of the premises from defendant. If there were no other evidence on the subject than·that Gage collected the rents and turned them over to his wife, we should at once answer the question in the negative. But we find that, from the moment the property was bought, Gage openly dealt with reference to it as if he had general control and management. He not only collected the rents, but the receipts he gave for them were signed by him-

self.  He made repairs from time to time, and paid for them out of the rents received.  And Mrs. Gage knew that he was treating this property substantially as if it were his own.  She knew that checks for rents were made payable to her husband, for he handed over to her at least one check payable to his order and indorsed by him.  She also knew that he was making repairs from time to time, and paying for them out of the rents, and that he was accounting to her for the overplus when and as he chose.  Gage testified:

"I collected the rents.  I didn't always turn them over to her.  I collected the rents and disbursed them on account of her property, and that which I didn't disburse on account of her property I turned over to her.  I have accounted to her.  I don't know that I accounted for all."

His right to represent her fully in dealing with this property is sufficiently indicated by this testimony of Gage, whose purpose, nevertheless, in going upon the witness stand, was to make his alleged misrepresentation of his authority the basis of mulcting $2,500 out of this defendant for the benefit of either the witness or his wife.  Indeed, his effort to bring about a recovery for rent of premises not occupied, at his solicitation, makes it quite difficult to believe that he advanced $500 to secure possession of the premises without authority.  It is more likely that he knew he was so acting as that he could secure a reimbursement to that extent.  The conduct of Mrs. Gage, in the light of all these acts of her husband, presented, we think, a situation which authorized a jury to find, as an inference of fact, that Gage acted for his wife in procuring the possession of the premises from the defendant.

It is true that the defendant did not execute a deed of surrender, but there was a surrender by operation of law.  Gage, with authority to represent the principal, as we must now assume, not only asked the defendant to give up his lease, but offered to pay, and did pay, him $500 for doing so.  As a further inducement, Gage entered into an agreement with Sloane not to permit the premises to be used for a period of two years for the carrying on of the same business as that in which Sloane was engaged.  Sloane executed and delivered to Gage an assignment of his lease.  Afterwards, and at the time agreed upon, he vacated the premises and delivered up the key, which was accepted.  Thus became executed the agreement to surrender, which is held to be a surrender by operation of law.  Wood, Landl. & Ten. § 497; Tayl. Landl. & Ten. § 515.

The judgment should be affirmed, with costs.

RUMSEY, WILLIAMS, and PATTERSON, JJ., concur.  VAN BRUNT, P. J., dissents.